23884, 23885. WILLIAMSON, Director v. SOUTHERN REGIONAL COUNCIL, INC.; and vice versa.

SUBMITTED JANUARY 10, 1967—DECIDED MARCH 9, 1967.

*Otis L. Hathcock, Raymond R. Callaway,* for appellant.

*Haas, Holland, Freeman, Levison & Gibert, Hugh W. Gibert, Edward L. Greenblatt,* for appellee.

Cook, Justice. Executions totaling $17,993.17 were issued by Marion Williamson, as Director of the Employment Security Agency of the Department of Labor of Georgia, against Southern Regional Council, Inc., for contributions under the Employment Security Law for the period from January 1, 1956, through the first quarter of 1964. These executions were levied on certain personal property of Southern Regional Council, Inc. Affidavit of illegality was filed, and on the trial of the issue the jury found for Southern Regional Council, Inc. The appeal by Marion Williamson, as Director, is from the judgment entered on this verdict. Southern Regional Council, Inc., filed a cross appeal, in which constitutional questions were made.

Under the "Unemployment Compensation Law" (Ga. L. 1937, pp. 806-848), as amended by Ga. L. 1941, pp. 532-564, and further amendments, the term "employment" has excluded from it numerous services. Subsection (H) of these exclusions is the one under which Southern Regional Council, Inc., claims that it is exempt from the requirement of making contributions under this law. This subsection provides as follows: "Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation." *Code Ann.* § 54-657 (h) (7) (H).

The Director of the Employment Security Agency made twelve assignments of error in his enumeration of errors. The brief of counsel for the director states that the issues are as follows: "(1) Did the lower court as a matter of law err in overruling appellant's special demurrers; (2) Do the facts and law in the case entitle appellee corporation to the exemption under Section 54-657 (h) (7) (H) of the Employment Security Law of the State of Georgia; (3) Did the lower court as a matter of law err in its definition of propaganda in its charge

to the jury limiting the connotation of the word (propaganda) to influencing the legislature." These are the only issues argued in the brief, and we will confine ourselves to these questions. Marion Williamson, as Director of the Employment Security Agency of the Department of Labor of Georgia, will be referred to herein as appellant, and Southern Regional Council, Inc., as appellee.

■ The appellant assigned error on the overruling of his special demurrers to Paragraphs 10, 11, 13, and 14 of the amended affidavit of illegality. These paragraphs alleged that other organizations engaged in activities of the same nature were excluded from the operation of the Employment Security Law, and to deny the appellee this exclusion would be denying it equal protection under the state and federal Constitutions, and that the appellant is using the power to tax as a means of inhibiting the appellee's freedom of speech, which is violative of stated provisions of the state and federal Constitutions. The trial judge found that the special demurrers to these paragraphs were not free from fault themselves, and therefore overruled them. We affirm this ruling; but also point out that the case was tried on its facts as to whether the operations of the appellee came within the exclusion of *Code Ann.* § 54-657 (h) (7) (H), and the appellee was required to assume the burden of proving that its operations came within the exclusion. The rulings on demurrer were not, therefore, harmful to the appellant.

■ *Code Ann.* § 54-657 (h) (7) (H) can not be termed a tax exemption in the strictest sense. The sums paid by employers to the unemployment compensation fund are called "contributions." These sums are paid in connection with "employment" coming within the definition of that term, and this definition excludes various services, one service being that in the employ of a "corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation."

The trial judge charged the jury that they should determine whether the majority of the activities of the appellee were directed in furtherance of charitable or educational purposes, or a combination of the two. In interpreting *Code Ann.* § 54-657 (h) (7) (H) no aid can be received from the cases decided under the constitutional provision for exemptions from taxation (Art. VII, Sec. I, Par. IV; *Code Ann.* § 2-5404), or *Code Ann.* § 92-201, enacted pursuant to this constitutional provision, since the wording of the constitutional tax exemption is entirely different from the wording of the exclusion from contributions to the unemployment fund. For example, the constitutional provision exempts from taxation "all institutions of purely public charity," whereas the exclusion from contributions to the unemployment fund designates service "performed in the employ of a corporation . . . operated exclusively for . . . charitable, . . . or educational purposes, . . ."

*Code* § 108-203 provides that the following subjects, among others, are proper matters of charity for the jurisdiction of equity: "2. Every educational purpose. . . 6. Redemption or relief of prisoners or captives. . . 8. Other similar subjects, having for their object the relief of human suffering or the promotion of human civilization."

It was not error to instruct the jury that the appellee would be exempt if it is operated for charitable or educational purposes, or a combination of the two.

The application for charter of the appellee stated the objects and purposes of the corporation to be: "to exist and function as an eleemosynary organization, and more particularly to organize and maintain a Regional Council for the improvement of economic, civic and racial conditions in the South, in the endeavor to promote a greater unity in the South in all efforts towards regional and racial development; to attain through research and action programs the ideals and practices of equal opportunity for all peoples in the region; to reduce race tension, the basis of racial tension, racial misunderstanding, and racial distrust; to develop and integrate leadership in the South on new levels of regional development and fellowship; and to cooperate with local, state and regional agencies on all levels in the attainment of the desired objectives."

Mr. Paul Anthony, executive director of the appellee, testified that the following were projects of the appellee: urban planning; prison reform and criminal rehabilitation; prevention of juvenile delinquency; voter education; library development; and research on unemployment problems and welfare programs. The appellee publishes a publication known as "New South," and also publishes and distributes other writings, such as speeches and newspaper articles, which relate to subjects of special interest to the appellee. The appellee maintains a regular staff for the purpose of research, and commissions other persons, not connected with the corporation, to conduct research and write reports on such research.

There was evidence from which the jury was authorized to find that the appellee was operated for charitable purposes, and there was no contradiction in the evidence that no part of the net earnings of the appellee inures to the benefit of any private shareholder or individual.

■ The judge instructed the jury as follows: "I charge you that the meaning of the term or terms carrying on propaganda or otherwise attempting to influence legislation as set forth in the statute in question, consistent with constitutional limitation, can encompass two things and only two things. Those are, lobbying activities in the narrow sense of making direct approaches to legislators, aldermen, congressmen or other similar officials for the purpose of influencing their vote on particular pending or proposed legislation pending before those legislative bodies; or, two, active campaigning for candidates or a candidate for elective public office."

It is the contention of the appellant that the publications of the appellee constitute "carrying on propaganda" within the meaning of *Code Ann.* § 54-657 (h) (7) (H), and that the instruction of the judge unduly limited the meaning of the term as used in the statute. The appellate courts of this state have not defined "propaganda" as used in this section. The appellant does not suggest what definition of "propaganda" the judge should have given to the jury. In the brief for the appellant various divergent definitions of the word "propaganda" are given, which merely illustrate the fact that the word has various

meanings, according to its use. "Propaganda" may mean the dissemination of ideas, or it may be used as a derogatory epithet against those having opposing views to the person using the word. The appellant quotes from some of the definitions given in Seasongood v. Commissioner of Internal Revenue, 227 F2d 907, in which similar language of the United States Internal Revenue Code of 1939 is construed, but the writer of that opinion had a different view of the meaning of the word "propaganda" from the definitions which he stated his colleagues thought applicable (from which definitions the appellant quoted).

If the word "propaganda" is given the broad meaning that it is any dissemination of ideas, then no religious or educational institution could qualify under Code Ann. § 54-657 (h) (7) (H), since a substantial part of the activities of such institutions is the dissemination of ideas and beliefs. Under the constitutionally protected right of freedom of speech, an organization can not be penalized for disseminating ideas which are not opposed to our system of government, even though such ideas may not meet with the approval of all of the people in the area in which they are advanced.

The words "carrying on propaganda" in this statute must be construed in connection with the words following it, "or otherwise attempting to influence legislation." The use of the word "otherwise" indicates that "carrying on propaganda" relates to "attempting to influence legislation." We think the trial judge did not err in limiting the meaning of the words "carrying on propaganda, or otherwise attempting to influence legislation," as he did in the charge assigned as error.

Under the definition given, the jury was authorized to find that the publications of the appellee introduced in evidence did not disqualify it from claiming the exclusion of Code Ann. § 54-657 (h) (7) (H). There was no evidence that the appellee had attempted in any direct manner to influence legislation.

The jury was authorized to find for the appellee, and no error is shown in the judgment appealed from in the main appeal. It is therefore unnecessary to deal with the assignments of error in the cross appeal.

*Judgment affirmed on the main appeal; cross appeal dismissed. All the Justices concur.*